IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN R. SHEFFIELD, | ) | CASE NO. 3:16 CV 580 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Robin R. Sheffield, for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders the parties have briefed their positions[7] and filed

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document entry order dated March 10, 2016.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF #10 .

[5] ECF # 5

[6] ECF # 11.

[7] ECF # 19 (Commissioner's brief); ECF # 12(Sheffield's brief).

supplemental charts[8] and the fact sheet[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Sheffield who was 47 years old at the time of the administrative hearing,[11] is a high school graduate with one year of college.[12] She lives with her mother and has never been married.[13] Sheffield previously worked as an assistant day care teacher, housekeeping cleaner, packer, line packer, sales associate, and inspector.[14]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Sheffield had the following severe impairments: angina, hypertension, irritable bowel syndrome, facet degeneration of the lumbar spine, mood disorder, anxiety disorder and obesity (20 CFR 404.1520(c) and 416.920(c).[15] The ALJ made the following finding regarding Sheffield's residual functional capacity:

---

[8] ECF # 19-1 (Commissioner's charts); ECF #14 at 3-6 (Sheffield's charts).

[9] ECF #14 at 1-2.

[10] ECF # 21.

[11] ECF # 10, Transcript ("Tr.") at 7.

[12] *Id.* at 43.

[13] *Id.* at 197-198.

[14] *Id.* at 30.

[15] *Id.* at 17.

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she can lift or carry up to twenty (20) pounds occasionally and up to ten (10) pounds frequently, can stand or walk for about six (6) hours and can sit for about six (6) hours during an eight hour workday, except: Ms. Sheffield can constantly balance, she can frequently stoop, kneel, crouch and crawl and she can occasionally climb ramps or stairs, but she must never climb ladders, ropes or scaffolds; Ms. Sheffield is limited to frequent overhead reaching with the left upper extremity; Ms. Sheffield must avoid all exposure to hazards such as dangerous machinery and unprotected heights and Ms. Sheffield is limited to work consisting of simple, routine tasks (defined as SVP 1 or 2).[16]

Given that residual functional capacity, the ALJ found Sheffield capable of her past relevant work as a housekeeping cleaner and a line packer and, therefore, not under a disability.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Sheffield could perform. The ALJ, therefore, found Sheffield not under a disability.[18]

**B.     Issues on judicial review**

Sheffield asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Sheffield presents the following issues for judicial review:[19]

---

[16] *Id.* at 20.

[17] *Id.* at 30.

[18] *Id.* at 32.

[19] ECF # 12 at 1.

- Whether the ALJ erred at Step 3 in finding that the plaintiff's impairments did not meet or equal a listing § 1.04.

- Whether the ALJ erred at Step 4 in that he failed to include plaintiff's limitations for sitting, standing, and walking as specified by Dr. Torello and failed to include the plaintiff's mental limitations as specified by Dr. Speakman.

- Whether the ALJ failed to properly apply the Sixth Circuit pain standard in that he made credibility findings which were not based on a full and accurate reading of the record as the fibromyalgia diagnosis from Dr. Hackshaw was not assessed.

The Court recommends that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, should be reversed and remanded.

# Analysis

**A. Standards of review**

*1. Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

*2.    Meeting a listing at step three*

If a claimant has a severe impairment or combination of impairments that meets one of the listings in Appendix 1 to Subpart P of the regulations, the claimant is disabled.[23] Because the listings describe impairments that the Social Security Administration considers "severe enough to prevent and individual from doing any gainful activity, regardless of his

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Circ. 2009); *Cunningham v. Comm'r of Soc. Sec.*, No. 5:10CV1001, 2012 WL 1035873, at *2 (N.D. Ohio March 27, 2012) (citing Rabbers).

or her age, education, or work experience,"[24] the Commissioner will deem a claimant who meets or equals the requirements of a listed impairment conclusively disabled.[25] Each listing sets out "the objective medical and other findings needed to satisfy the criteria of that listing,"[26] and the claimant bears the burden of proving[27] that he has satisfied all of he criteria of a listing in order to "meet the listing."[28]

Even if a claimant cannot demonstrate disability by meeting the listing, he may be disabled if his impairment is the medical equivalent of a listing.[29] Medical equivalent means that the impairment is "at least as equal in severity and duration to the criteria of any listed impairment."[30] The claimant seeking a finding that an impairment is equivalent to a listing must present "medical findings" that show his impairment is "equal in severity to all the criteria for the one most similar listed impairment."[31]

---

[24] 20 C.F.R. § 404.1525(a).

[25] *Rabbers*, 582 F.3d at 653.

[26] 20 C.F.R. § 404.1525(c)(3).

[27] *Rabbers*, 582 F.3d at 653.

[28] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

[29] 20 C.F.R. § 404.1520(a)(4)(iii).

[30] 20 C.F.R. § 404.1526(a).

[31] *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)(emphasis in original).

While the Sixth Circuit "does not require a heightened articulation standard [from the ALJ] at Step Three of the sequential evaluation process,"[32] "in order to conduct a meaningful review, the ALJ must make it sufficiently clear in his or her decision the reasons for the determination [as to the meeting a listing] in order for the Court to conduct a meaningful review."[33]

Specifically, the Sixth Circuit in *Reynolds* states the requirements for articulating the ALJ's step three analysis as follows:

> In short, the ALJ need[s] to actually evaluate the evidence, compare it to the criteria of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without [such articulation], it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.[34]

---

[32] *Marok v. Astrue*, No. 5:08CV 1832, 2010 WL 2294056, at *3 (N.D. Ohio June 3, 2010) (citing *Bledsoe v. Barnhart,* No. 04-4531, 2006 WL 229795, at *411 (6th Cir. Jan. 31, 2006) (citing *Dorton v. Hecker*, 789 F.2d 363, 367 (6th Cir. 1986).

[33] *Eiland v. Astrue*, No. 1:10CV2436, 2012 WL 359677, at *9 (N.D. Ohio Feb.2, 2012) (citing *Marok*, 2010 WL 2294056. At *3 (citations omitted)).

[34] *Reynolds*, 424 F.App'x at 415. In this regard, I note as Magistrate Judge Burke in *Shea v. Astrue*, No. 1:11 CV 1076, 2012 WL 967088, at *10 n. 6 (N.D. Ohio Feb. 13, 2012), that the Sixth Circuit's insistence on the articulation of reviewable reasons directly follows from the ALJ's statutory duties at 5 U.S.C. § 557 ( C )(3)(A) to include the "reasons or basis" for a decision.  Therefore, the Sixth Circuit has determined that the "reasons requirement" is both a procedural and substantive requirement, "necessary in order to facilitate effective and meaningful judicial review." *Shea*, 2012 WL 967088, at *10 n. 6 (quoting *Reynolds*, 424 F. App'x at 414).

Recent decisions in the District apply this rubric from *Reynolds* teach plainly that "a mere rote recitation if boilerplate language by an ALJ"[35] at step three provides an insufficient explanation for a conclusion regarding the meeting of a listing and so will require a remand.[36]

### 3. *Credibility*

As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[37] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms or limitations will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[38]

---

[35] *Jones v. Comm'r of Soc. Sec.*, 5:10CV2621, 2012 WL 946997, at *8 (N.D. Ohio March 20, 2012)(Baughman, MJ).

[36] *Id.*; *Cunningham v. Comm'r of Soc. Sec.*, No. 5:10CV1001, 2012 WL 1035873, at *2 (N.D. Ohio March 27, 2012)(citations omitted)(Baughman, MJ); Shea, 2012 WL 967088, at *10 (citations omitted); *May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *9 (N.D. Ohio June 1, 2011)(White, MJ), adopted, 2011 WL 3490229 (N.D. Ohio Aug. 10, 2011)(Adams, J.); *Marok*, 2010 WL 2294056, at —4-5 (N.D. Ohio June 3, 2010)(Pearson, MJ).

[37] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[38] *Id.* at 34484.

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[39]

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[40]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[41] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side

---

[39] 20 C.F.R. § 416.929(c)(2).

[40] *Swain*, 297 F. Supp. 2d at 988-89.

[41] 20 C.F.R. § 404.1529(c)(3).

effects of medication; and treatment or measures, other than medication, taken to relieve pain.[42]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[43] A court may not disturb the ALJ's credibility determination absent compelling reason.[44]

---

[42] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[43] *Buxton*, 246 F.3d at 773.

[44] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

### *4.     Fibromyalgia analysis*

Fibromyalgia is an "elusive" and "mysterious" disease.[45] It has no known cause and no known cure.[46] Its symptoms include severe musculoskeletal pain,[47] stiffness,[48] fatigue,[49] and multiple acute tender spots at various fixed locations on the body.[50]

The presence of these tender spots is the primary diagnostic indicator of the disease.[51] There is no laboratory test for the disease's presence or severity.[52] Physical examinations usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions.[53]

The law of the Sixth Circuit on the analysis of fibromyalgia in disability cases is extensively set out in *Rogers v. Commissioner of Social Security*.[54] This case follows closely

---

[45] *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

[46] *Id.*

[47] *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817 (6th Cir. 1988).

[48] *Id.*; *Sarchet*, 78 F.3d at 306.

[49] *Id.*

[50] *Preston*, 854 F.2d at 817; *Sarchet*, 78 F.3d at 306.

[51] *Id.*

[52] *Sarchet*, 78 F.3d at 306.

[53] *Preston*, 854 F.2d at 818.

[54] *Rogers*, 486 F.3d at 243-46.

on the analytical framework that I laid out in *Swain v. Commissioner of Social Security*.[55] In both *Rogers* and *Swain*, the ALJs rejected the opinions of treating rheumatologists who had established the severity of fibromyalgia by tender point analyses and who had offered specific opinions regarding the limitations caused by that severity. In both cases, the ALJs rejected the opinions of the treating rheumatologists because those opinions did not have the support of objective medical evidence. As observed in *Rogers* and *Swain*, because of the nature of fibromyalgia, its diagnosis and the determination of the limitations caused thereby cannot be determined from objective medical evidence.[56] If a treating rheumatologists has conducted proper analysis, his opinion should ordinarily be afforded controlling or great weight.[57]

In *Dalzell v. Commissioner of Social Security*,[58] I made clear that the proof needed to pass a certain threshold before the opinion of a treating physician would be entitled to controlling or substantial weight. The gold standard for this threshold is the specialty of the treating physician (preferably a rheumatologists) and findings from tender point analysis.[59]

---

[55] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990-94 (N.D. Ohio 2003).

[56] *Rogers*, 486 F.3d at 243-44; *Swain*, 297 F. Supp. 2d at 990.

[57] *Rogers*, 486 F.3d at 244-45; *Swain*, 297 F. Supp. 2d at 993.

[58] *Dalzell v. Comm'r of Soc. Sec.*, Case No. 1:06 CV 557, ECF # 25 at 4-5, 7 (N.D. Ohio Jan. 8, 2007).

[59] *Ormiston v. Comm'r of Soc. Sec.*, No. 4:11 CV 2116, 2012 WL 7634624, at *5 (N.D. Ohio Dec. 13, 2012) (unreported).

The threshold referred to above is not a bright line. These cases must be viewed on a continuum. On one end of the continuum are those cases involving primary care physicians, not rheumatologists, who diagnose fibromyalgia and do no tender point analysis. On the other end of the continuum are those cases such as *Rogers* and *Swain* where a treating rheumatologists performs proper tender point analysis and gives an opinion imposing specific limitations caused by the fibromyalgia.

That said, the case authority is clear that even with a "gold standard" diagnosis of fibromyalgia (*i.e.*, a claimant whose sensitivity of at least 11 of 18 trigger points on the body was determined by a physician who also noted other "hallmark symptoms" and systematically eliminated other diagnoses)[60] will not automatically entitle a claimant to disability benefits.[61] Rather, a determination of disability will be the result of finding limitations imposed by the fibromyalgia.[62]

In that regard, the finding of any limitations imposed by pain from fibromyalgia will usually involve a treating physician's opinion on that issue as well as testimony from the claimant. But, as *Swain* points out, because a physician's opinion on this matter will usually

---

[60] *See*, *Rogers*, 486 F.3d at 244 (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). The Commissioner correctly points out that Ormiston's treating physician, Dr. Dib, is not a rheumatologist and did not document the number and location of the positive trigger points found. Dr. Dib's analysis, therefore, falls significantly short of the gold standard referred to in *Rogers*.

[61] *Vance*, 260 F. App'x at 806.

[62] *Swain*, 297 F. Supp. 2d at 990. "[U]ltimately, the ALJ must decide, given the factors set forth in the regulations, if the claimant's pain is so severe as to impose limitations rendering her disabled."

depend in large part on an his assessment of his patient's subjective complaints, it is the ALJ's assessment of the claimant's credibility that is of "paramount importance" in a fibromyalgia case.[63] That said, insofar as a treating physician's opinion as to functional limitations is not grounded on the claimant's own subjective complaints, it is, as detailed above, entitled to weight to the extent that it is supported by that physician's treating notes and not otherwise contradicted by other substantial evidence of record.[64]

It is well-settled that pain alone, if caused by a medical impairment, may be enough to be disabling.[65] When such an allegation is made, the ALJ then usually follows a two-step analysis that asks: (1) whether there is an underlying medical impairment, and (2) whether there is objective evidence to confirm the pain or whether the underlying condition is such that it can reasonably be expected to produce the alleged disabling pain.[66] Because disabling pain from fibromyalgia will not often be confirmable by objective medical tests, but such pain is possible from that condition, the ultimate issue often becomes whether the claimant's own complaints in that regard are credible.

---

[63] *Wines*, 268 F. Supp. 2d at 958.

[64] *Dalzell*, Case No.1:06-CV-557, at 4-5.

[65] *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).

[66] *See*, *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).

**B.    Application of standards**

This case again presents the issue of how a diagnosis of fibromyalgia was dealt with by an ALJ. Resolution of this question substantially affects the other asserted claims, particularly the issues of Sheffield's credibility and the ALJ's determination of the RFC.

I note first that the ALJ did reference Sheffield's "allegation" of fibromyalgia, and also did correctly observe that because fibromyalgia itself does not have a specific listing, it must be analyzed according to its symptoms.[67]

But, the analysis here starts not with a mere allegation but with the fact that Sheffield's fibromyalgia was a confirmed diagnosis in August 2013 by Dr. Kevin Hackshaw, M.D., a rheumatologists and associate professor of internal medicine at The Ohio State University College of Medicine and Public Health.[68] That diagnosis was made after Dr. Hackshaw conducted a tender point analysis examination where he found that control tender points were negative but that "[p]ainful tender points were elicited in more than 11 of 18 sites with moderate hyperalgesia."[69] Dr. Hackshaw also noted that "[n]eurologic examination revealed an antalgic gait."[70] Additionally, as part of his clinical notes, Dr. Hackshaw observed that Sheffield's description of diffuse pain was "most consistent" with fibromyalgia, and that Sheffield meets the "hypersensitivity criteria in terms of painful tender

---

[67] Tr. at 18.

[68] *Id*. at 892.

[69] *Id.*

[70] *Id*.

points to classify as [fibromyalgia] however there are some mental health issues that play a part in her picture."[71]

In March 2014 Sheffield returned to Dr. Hackshaw complaining that her pain was worse and that she had been having difficulty walking.[72] Dr. Hackshaw again found painful tender points at 11 of 18 sites, as well as an antalgic gait, and prescribed a rolling walker.[73]

The ALJ, without explicitly discussing the diagnosis of fibromyalgia by a rheumatologists using the tender point test, and confirming notes from a second visit to that same specialist, sought to minimize Dr. Hackshaw's findings by stating that there was no evidence of gait impairment in the records of Daniel Simino, a nurse practitioner, and in an emergency room visit in February 2014 for back and shoulder pain.[74] The ALJ further stated that he could find "little objective [evidence] that Ms. Sheffield's impairments warrant the use of an assistive device."[75]

I note first that although Dr. Hackshaw treated Sheffield at least twice over a relatively brief period, there is no discussion of whether he is a treating source in this case, with his opinion on functional limitations such as mobility therefore entitled to enhanced

---

[71] *Id.*

[72] *Id.* at 913.

[73] *Id.*

[74] *Id.* at 24. This restriction to only the records of the immediately prior sources excludes the fact that in June 2013 Dr. Samir Iskander, M.D., a pain management specialist, found that Sheffield's gait was slow but functional. *See, id.* at 23.

[75] *Id.*

-16-

weight. Further, the ALJ's comment about a supposed lack of evidence for an assistive device does not analyze the fact, noted earlier, that in June 2013 Dr. Iskander essentially confirmed Dr. Hackshaw's observation about Sheffield's gait by stating that Sheffield's gait was slow but functional. Moreover, in April 2013 a consultative examination by Lynn Torello, M.D., also found that although Sheffield had full motor strength and full range of motion, she nevertheless "exhibited pain behaviors and walked with an antalgic gait."[76] Thus, far from being alone in noticing Sheffield's gait or her description of diffuse pain that was "most consistent" with fibromyalgia, Dr. Hackshaw's clinical findings were confirmed by two other examining M.D.'s earlier in 2013. Moreover, an experience of pain while ambulating is not inconsistent with either normal strength or normal range of motion, but would certainly provide a reason for prescribing an assistive device.[77]

Here, as in many fibromyalgia cases, the claimant's credibility as to pain becomes an issue. Unlike many cases, here there are the objective tender point tests which support Sheffield's complaints, as well as Dr. Hackshaw's clinical notes which find that Sheffield's complaints are most consistent with fibromyalgia, and Dr. Hackshaw's opinion that Sheffield meets the hypersensitivity criteria for fibromyalgia. But, with all that of record, the ALJ sought to minimize Dr. Hackshaw's findings, as detailed above, and failed to analyze

---

[76] *Id*.

[77] Sheffield in fact stated that pain was less intense while using a walker. *See*, tr. at 913-15. The Commissioner appears to argue that pain while ambulating is not an objective reason for prescribing a walker, but that the presence of a full range of motion was sufficient reason to find no disabling impairment here. ECF # 19 at 15-16.

Sheffield's diagnosis of fibromyalgia as in the context of either the objective clinical findings or the context of Sheffield's credibility as to pain, as viewed and supported by Dr. Hackshaw's findings.

Failure to do so here means that the ALJ's articulated reasons for minimizing Dr. Hackshaw's findings, for failing to find fibromyalgia to be a severe impairment,[78] and for discounting Sheffield's credibility[79] are not supported by substantial evidence.

## Conclusion

Therefore, for the reasons stated above, I recommend finding that the decision of the Commissioner here is not supported by substantial evidence as detailed above and so should be reversed and the matter remanded for further proceedings consistent with this Report and Recommendation.

Dated: December 28, 2016　　　　　　　　　　　　s/ William H. Baughman, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[80]

---

[78] Tr. at 17.

[79] *Id*. at 21.

[80] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).